IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SKYLER ASHBOCKER and AUBREY ASHBOCKER, individually and as the natural parents and legal guardians of O. A., minor,<br><br>Plaintiffs,<br><br>v.<br><br>VICTORIA E. JUDD, M.D.; IHC HEALTH SERVICES, INC. d/b/a PRIMARY CHILDREN'S HOSPITAL; UNIVERSITY OF UTAH HEALTH; DOES 1–10; and ROES 1–10,<br><br>Defendants. | **ORDER AND MEMORANDUM DECISION ON REMAINING MOTIONS IN LIMINE**<br><br>Case No. 2:19-cv-00007-TC<br><br>Judge Tena Campbell |

On October 17, 2023, the court held a hearing to determine the remaining motions in limine pending in this matter in preparation for a 10-day jury trial set to begin on December 4, 2023. The court now issues a written opinion memorializing the rulings made at the hearing and deciding the matters that the court took under advisement.

I. **Motion to Vacate and Stay Proceedings (ECF No. 383)**

Defendants Victoria E. Judd, M.D., and the University of Utah Health (together, the University Defendants) move the court to vacate the upcoming trial date and stay proceedings pending resolution of <u>Tullis v. University of Utah</u>, No. 20230672-SC, in which the Utah Supreme Court has been asked to decide whether the damages cap in the Utah Governmental Immunity Act (UGIA) applies to the University of Utah.

At the hearing, the court denied the University Defendants' motion. Any ruling by the Utah Supreme Court will only affect the result in this trial if the jury finds that the University Defendants are liable and awards damages in excess of the statutory cap. The court will therefore address the impact of the pending appeal as necessary after trial.

The University Defendants also argue that the court should dismiss this matter for lack of subject matter jurisdiction, citing statutory language that state district courts "have exclusive, original jurisdiction" over any actions brought under the UGIA. Utah Code Ann. § 63G-7-501(1).

The Utah Supreme Court has previously declined to answer a certified question about whether the Utah Attorney General or other parties may waive the jurisdiction and venue provisions of the UGIA. See GeoMetWatch Corp. v. Utah State Univ. Research Found., 428 P.3d 1064, 1082 (Utah 2018) ("[W]e decline to answer the second and third certified questions …."). But the court also noted that "federal courts have recognized an 'extraordinarily effective waiver' of Eleventh Amendment immunity when the state voluntarily removes the case to federal courts and litigates it on the merits … —to hold otherwise would be grossly inequitable.'" Id. at 1081 (quoting Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1235–36 (10th Cir. 1999)).

Here, the University Defendants expressly consented to the removal of this case from state district court by Defendant IHC Health Services, Inc. dba Primary Children's Hospital (PCH). And they have litigated the case in federal court for nearly five years without raising this jurisdictional concern. Under these circumstances, the court is satisfied that the state has waived any Eleventh Amendment immunity. And the parties do not dispute that jurisdiction is otherwise appropriate under 28 U.S.C. § 1332. The court is therefore satisfied that is has subject matter

jurisdiction in this matter.

## II. Motion to Strike Plaintiffs' Rebuttal Experts (ECF No. 358)

The University Defendants move to strike the Plaintiffs' expert Dr. Kevin Friedman and the rebuttal reports of Dr. Stephanie Handler and Dr. Laurie Armsby, arguing that the disclosure of Dr. Friedman and the rebuttal reports was untimely and made without obtaining leave of court.  The court denies this motion because it finds that the Plaintiffs had good cause for the delay—namely, the disclosure by the University Defendants of new expert witnesses, Dr. Gregory Brames and Dr. Julie Kim Stamos, in January 2023.  (See Motion to Strike, ECF No. 358 at Ex. A.)  These experts presented new theories about the source of O.A.'s pulmonary hypertension, including that it may have been caused by an early viral respiratory infection or Kawasaki disease.

The court further finds that the Plaintiffs disclosed their rebuttal expert and reports sufficiently in advance of trial to avoid any undue prejudice to the University Defendants.

Judge Jenkins previously ruled that the court would conduct voir dire of Dr. Brames and Dr. Stamos before they would be allowed to provide testimony to the jury.  (Order Re: Motions in Limine, Aug. 15, 2023, ECF No. 364 at 2.)  The court reaffirmed that decision at the hearing and set a Daubert hearing for the morning of December 4, 2023.  The court now further orders the Plaintiffs to make Dr. Friedman, Dr. Handler, and Dr. Armsby available for the Daubert hearing.  The court will limit its questioning to the rebuttal testimony these experts plan to provide.  The court is primarily concerned with determining whether the testimony of both parties' experts—about whether Kawasaki disease or an early viral respiratory infection could have caused O.A.'s pulmonary hypertension—sufficiently comports with the requirements of Federal Rule of Evidence 702.

3

### III. Motion to Exclude Argument that PCH Paid Dr. Judd (ECF No. 291)

PCH moves to exclude any argument that PCH paid Dr. Judd for her services. While the Plaintiffs do not dispute that the University of Utah paid Dr. Judd's salary, they suggest that there is evidence of additional payments made directly from PCH to Dr. Judd. But they have been unable to provide adequate evidence to the court.

First, the Plaintiffs rely on an agreement between the University of Utah and PCH that "Dr. Judd will be based at the Primary Children's Medical Center and her salary will be derived from those sources."[1] Such an agreement does not provide direct evidence that PCH paid Dr. Judd, even if Dr. Judd received a benefit from her location at PCH. Second, the Plaintiffs maintain that PCH paid the University for University-affiliated doctors to read and interpret EKG studies—again, not evidence that PCH paid Dr. Judd directly. Finally, the Plaintiffs argue that a jury could conclude that PCH paid Dr. Judd during the twelve years she served as a medical director. But the Plaintiffs do not dispute that Dr. Judd's time as a medical director ended in 2000 and that she was not a medical director while providing care to O.A. Any previous payments Dr. Judd may have once received from PCH occurred outside the relevant timeframe. Even assuming some minimal relevance, the probative value of such evidence is substantially outweighed by the danger of confusing the issues and misleading the jury.

The court therefore grants the motion and excludes argument that PCH paid Dr. Judd directly. But as discussed more fully below, the court's ruling does not preclude the Plaintiffs from presenting evidence of non-monetary benefits that Dr. Judd may have received from PCH.

---

[1] The Plaintiffs cite to Exhibit G of ECF No. 111-1, but this document appears to be an offer of employment from the University of Utah to Dr. Judd and does not contain the language quoted by the Plaintiffs. (See Pls.' Opp'n, ECF No. 324 at 6.)

4

### IV. Motion to Exclude Argument that PCH Billed for Dr. Judd's Services (ECF No. 295)

PCH moves to exclude argument that PCH billed for Dr. Judd's services. PCH provides the bill and records for the echocardiology services it provided O.A. after her January 22, 2014 visit. (PCH's Mot. in Limine Re: Billing, ECF No. 295 at Exs. A & D.) While both the bill and records include Dr. Judd's name as the ordering physician, PCH contends that: 1) bills and records looked similar even when Dr. Judd did not see O.A. and only PCH provided services; 2) PCH did not send a bill after O.A.'s July 11, 2014 visit when only Dr. Judd saw O.A. and PCH did not provide services; and 3) the University of Utah sent bills for Dr. Judd's services.

While PCH may present these arguments to the jury, the court finds that the bills and records containing Dr. Judd's name should not be excluded. Plaintiffs' counsel contends the Ashbockers saw these documents containing Dr. Judd's name and without PCH's proffered explanations. The documents are therefore relevant to the question of agency. Accordingly, the court denies this motion.

### V. Motion to Exclude Cumulative Photographs (ECF No. 296)

PCH moves to exclude some of the 66 photographs contained in Plaintiffs' Exhibit 25, arguing that the number of photographs is cumulative. The parties have now stipulated to a selection of 26 photos. The court therefore terminates this motion as moot.

### VI. Motion to Preclude Plaintiffs from Referring to Dr. Judd as an Employee of PCH (ECF No. 297)

PCH moves to preclude the Plaintiffs from referring to Dr. Judd as an employee of PCH. The Plaintiffs have similarly requested that the court preclude the Defendants from referring to Dr. Judd as a non-employee of PCH.

The court finds that a blanket exclusion prohibiting all parties from stating that Dr. Judd

5

is either an employee or a non-employee of PCH would not be appropriate. The question of Dr. Judd's employment status is central to the decision the jury will be asked to make about actual agency. The court has previously denied PCH's motion for summary judgment on this issue, holding that "a reasonable jury could determine that PCH is a joint employer of Dr. Judd along with the University …." (Order Denying Summ. J., Jan. 31, 2022, ECF No. 138 at 2.)

Under the Utah Health Care Malpractice Act, an "agent" means "a person who is an 'employee,' 'worker,' or 'operative,' as defined in Section 34A-2-104, of a health care provider." Utah Code Ann. § 78B-3-424(1)(a). Section 34A-2-104, which is part of the Workers' Compensation Act, defines an "'employee,' 'worker,' and 'operative'" as:

> (b) a person in the service of any employer … who employs one or more workers or operatives regularly in the same business, or in or about the same establishment:
>     (i) under any contract of hire:
>         (A) express or implied; and
>         (B) oral or written;
>     (ii) including aliens and minors, whether legally or illegally working for hire; and
>     (iii) not including any person whose employment:
>         (A) is casual; and
>         (B) not in the usual course of the trade, business, or occupation of the employee's employer.

Utah Code Ann. § 34A-2-104.

In the context of this statute, the Utah Supreme Court has noted that "employee status is not determined by its dictionary definition …." Gourdin ex rel. Close v. Sharon's Cultural Educ. Recreational Ass'n, 845 P.2d 242, 244 (Utah 1992). Instead, the Court set forth "several factors to be considered in determining whether an employment relationship exists." Id. (citation omitted). The Court examined whether "an employee is hired and paid a salary or wage, works under the direction of the employer, and is subject to the employer's control. We have also

considered the intent of the parties and the business of the employer." Id. (citation omitted). The Court noted that of these factors, "compensation, direction and control, intent, and business context …, all need not be present to support a finding of employee status" and "no single factor is completely controlling." Id. Finally, the Court found that the question of employee status was properly within the province of the jury even though the potential employee in question was not paid a wage, but rather received some benefits which may or may not have been compensation for his work. Id. at 244–45; compare Blamires v. Bd. of Rev. of Dep't of Emp. Sec. of Indus. Comm'n, 584 P.2d 889 (Utah 1978) (finding that an employee must be entitled to remuneration to perform a service under a "contract of hire" in the context of unemployment benefits, but not in the context of workers' compensation).

Given this broad, statute-specific interpretation of "employee," both parties should avoid making definitive statements about Dr. Judd's employment status. The court will remind the jury as necessary that it is for the jury to decide whether Dr. Judd meets the definition of an employee under the statute.

Accordingly, the court denies the motion without prejudice. Any party may raise objections at trial as necessary.

### VII. Motion to Exclude Plaintiffs' Exhibit 1 (ECF No. 298)

PCH moves to exclude Plaintiffs' Exhibit 1,[2] which is a document labeled "Pulmonary Newborn Findings, Problems, Factors, Symptoms." PCH argues that the document, which Plaintiff asserts contains guidelines applicable to Dr. Judd during the time when she provided care to O.A., is irrelevant to the requisite standard of care and does not demonstrate that Dr. Judd

---

[2] This exhibit is listed as Plaintiffs' Exhibit 5 in the Joint Proposed Pretrial Order (ECF No. 378).

was an agent of PCH.

The court finds that the Plaintiffs have not yet presented sufficient foundation to tie these guidelines to the relevant standard of care or demonstrate their relevance to Dr. Judd's treatment of O.A. Nevertheless, it is not clear exactly how the Plaintiffs intend to use this document and the court cannot offer a meaningful ruling without this context. The court therefore denies the motion without prejudice; PCH may renew its objections at trial.

### VIII. Motion to Exclude Plaintiffs' Exhibit 2 (ECF No. 299)

PCH moves to exclude Plaintiffs' Exhibit 2, which is a document titled "Medical Director Non-Employed Physician Policy" dated December 2008. As the court has discussed above, Dr. Judd was not a medical director in 2008 or during the time in which she was providing care to O.A. The court therefore finds that this medical director policy is irrelevant to the issues of agency and the question of whether PCH had the right to control Dr. Judd.

The court grants the motion and excludes Plaintiffs' Exhibit 2.

### IX. Motion to Exclude Plaintiffs' Exhibit 16 (ECF No. 301)

PCH moves to exclude Plaintiffs' Exhibit 16, which includes four photos of the interior of the PCH's Eccles Outpatient Service building obtained from a Google search. The court finds that the Plaintiffs have not established that the photos accurately depict the building as it looked during the events at issue in this matter.

Accordingly, the court grants the motion and excludes Plaintiffs' Exhibit 16.

### X. Motion Regarding the Affordable Care Act (ECF No. 303)

At the hearing, the court heard argument about the extent to which Judge Jenkins has addressed issues pertaining to the Affordable Care Act. Judge Jenkins previously ruled that the Defendants should not refer to any private fundraising or the availability of insurance under the

Affordable Care Act. (See Order, Oct. 7, 2022, ECF No. 214 at 2.) Judge Jenkins later ruled that this exclusion also precludes cross-examination on the topic. (See Order Re: Motions in Limine, ECF No. 364 at 1, 3–4.)

In its motion regarding the Affordable Care Act, PCH seeks the same relief and incorporates the arguments of the similar motion filed by the University Defendants (ECF No. 289). Because Judge Jenkins already denied the University Defendants' motion (ECF No. 364), the court now similarly denies PCH's motion.

### XI. Motion to Join (ECF No. 305)

The University Defendants move to join certain of the motions in limine filed by PCH (ECF No. 305). The court has previously denied PCH's motion to exclude Plaintiffs' Exhibits 11 & 12 (see Order Re: Motions in Limine, ECF No. 364 at 4). The court now terminates as moot PCH's motion to exclude cumulative photographs (ECF No. 296) and denies PCH's motion to exclude Plaintiffs' Exhibit 1 (ECF No. 298). The University Defendants' joinder in these motions is therefore moot.

### XII. Motion to Strike and Objections to Plaintiffs' Fourth Supplemental Pretrial Disclosures (ECF Nos. 385 & 387)

The University Defendants have objected to the Plaintiffs' Fourth Supplemental Pretrial Disclosures (ECF No. 385) and moved to strike Jennifer Brennan as an untimely-disclosed witness (ECF No. 387). The Plaintiffs have offered to remove Ms. Brennan from their witness list given the University Defendants' stipulation to the authenticity of certain documents identified in the Plaintiffs' response (Pls.' Resp., ECF No. 388 at 3). The court therefore terminates the University Defendants' motion to strike as moot.

### XIII. Miscellaneous Matters

At the hearing, the Defendants objected to Plaintiffs' Exhibits 14 and 15 for reasons similar to PCH's objections against Exhibit 16 (see ECF No. 301). Exhibit 14 is a screenshot of the Intermountain Healthcare profile for four doctors (ECF No. 111-3 at 22). Exhibit 15 is a series of three photos depicting the outside of PCH's Eccles Outpatient Service building. For similar reasons to those stated above concerning Plaintiffs' Exhibit 16, the court excludes Plaintiffs' Exhibit 15 for lack of foundation and relevance. The court defers ruling on the request to exclude Exhibit 14 until trial, at which time the court will have a better understanding of the context in which the Plaintiffs seek to introduce this exhibit.

Finally, the court reminds the Plaintiffs that it is not inclined to allow the use of videotaped depositions during opening statements. But, if necessary, the court will hear argument on this issue on December 4, 2023.

### ORDER

For the foregoing reasons, the court ORDERS as follows:

1. PCH's Motion to Exclude Argument that PCH Paid Dr. Judd (ECF No. 291) is GRANTED.

2. PCH's Motion to Exclude Argument that PCH Billed for Dr. Judd's Services (ECF No. 295) is DENIED.

3. PCH's Motion to Exclude Cumulative Photographs (ECF No. 296) is TERMINATED AS MOOT.

4. PCH's Motion to Preclude Plaintiffs from Referring to Dr. Judd as an Employee of PCH (ECF No. 297) is DENIED WITHOUT PREJUDICE.

5. PCH's Motion to Exclude Plaintiffs' Exhibit 1 (ECF No. 298) is DENIED

WITHOUT PREJUDICE.

6. PCH's Motion to Exclude Plaintiffs' Exhibit 2 (ECF No. 299) is GRANTED.

7. PCH's Motion to Exclude Plaintiffs' Exhibit 16 (ECF No. 301) is GRANTED.

8. PCH's Motion Regarding the Affordable Care Act (ECF No. 303) is DENIED.

9. The University Defendants' Motion Joining Co-Defendants' Certain Motions in Limine (ECF No. 305) is TERMINATED AS MOOT.

10. The University Defendants' Motion to Strike Plaintiffs' Rebuttal Experts (ECF No. 358) is DENIED.  The court will conduct voir dire of Dr. Brames and Dr. Stamos, as well as of the rebuttal opinions of Dr. Friedman, Dr. Handler, and Dr. Armsby, at a Daubert hearing to begin at 9:00a.m. in Courtroom 3.400 on December 4, 2023.

11. The University Defendants' Motion to Vacate and Stay Proceedings (ECF No. 381) is DENIED.

12. The University Defendants' Motion to Strike (ECF No. 387) is TERMINATED AS MOOT.

13. The court excludes Plaintiffs' Exhibit 15.

14. The court DENIES WITHOUT PREJUDICE the Defendants' request to exclude Plaintiffs' Exhibit 14.

15. If necessary, the court will hear argument on December 4, 2023, about whether the Plaintiffs may use a videotaped deposition in their opening statements.

SO ORDERED this 22nd day of November, 2023.

BY THE COURT:

*Tena Campbell*
Tena Campbell
United States District Judge